UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO

ADAM REYNOLDS                                                                              PLAINTIFF

v.                                      CIVIL ACTION NO. 4:13CV-P132-M

RON HERRINGTON *et al*.                                            DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff Adam Reynolds, a prisoner proceeding *in forma pauperis*, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 (DN 1). This matter is before the Court for initial review pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons set forth below, this action will be dismissed.

**I. SUMMARY OF CLAIMS**

In his complaint Plaintiff names the following three Defendants: Ron Herrington, Jailer at Henderson County Detention Center (HCDC); Rick Hendricks, a Captain at HCDC; and McKnight,[1] a Deputy at HCDC. He brings this action against Defendants in both their individual and official capacities. As relief, Plaintiff seeks punitive damages and injunctive relief. The injunctive relief he seeks is for an order directing his "conditional transfer" and directing Defendant Herrington to reform certain policies at the HCDC.

Plaintiff represents that he is a state inmate housed at HCDC. Plaintiff alleges that during his time at HCDC his "Constitutional Rights have been blatantly and repeatedly violated" by Defendants. He sets forth six claims in his complaint.

---

[1] Plaintiff states that he does not know Defendant McKnight's first name because it "was refused to plaintiff."

In his first claim, Plaintiff states that for the past nine months he has been housed in the Community Service Complex (CSC) of the HCDC. According to Plaintiff, Defendant Hendricks is the "overseer" of the CSC. Plaintiff states that the policy of the CSC "allows for a maximum of 6 non-consecutive hours of dimmed lights for sleep." According to Plaintiff, as a result of this policy, "[v]ery few inmates can get over 5-6 hrs of sleep per night and it is interrupted frequently." Plaintiff states that this "causes [him] regular headaches and affects [his] appetite and demeanor." Plaintiff alleges that this sleep policy violates his Eighth Amendment right to be free from cruel and unusual punishment. He connects this violation to Defendant Herrington who, according to Plaintiff, allows the continuation of the policy and to Defendant Hendricks because he enforces the policy.

Plaintiff's second claim involves the painting of moldy ceiling tiles in A-dorm of the CSC. According to Plaintiff, on or about August 26, 2013, Defendant Hendricks directed inmates to remove moldy ceiling tiles from A-dorm and to paint over the mold. Plaintiff states that Defendant Hendricks's "justification of this . . . was that the paint used was mildew resistant." This was done, Plaintiff asserts, in order to hide the mold during an inspection. Plaintiff contends that this violates his Eighth Amendment right to be free from cruel and unusual punishment. He states that Defendant Hendricks is responsible for this violation because he ordered "the cover-up" and that Defendant Herrington is responsible because he failed "to resolve the issue when notified and fail[ed] to reprimand [Defendant Hendricks]."

Plaintiff's third claim involves events on October 15, 2013. According to Plaintiff, at 1p.m. that day when he returned from work he was "covered in dirt, grease, and dog feces." He requested a towel, but Defendant Hendricks and "other deputies at CSC refused to give out

towels until well after 5pm that evening." According to Plaintiff, the towels in A-dorm had been confiscated earlier that day when extra towels were found during a search. Plaintiff states that this act by Defendant Hendricks violated the Eighth Amendment.

As to Plaintiff's fourth claim, he states that from the time Defendant McKnight began working at HCDC, on or around May or June 2013, Defendant McKnight has "harrassed, demeaned, and humiliated [Plaintiff] in front of other inmates, as well as being racially discriminative." Plaintiff states that he overheard Defendant McKnight make racist remarks about white men and women on two occasions. He states that this "harassment has gone as far as [Defendant McKnight] hassling [Plaintiff's] family at visit." Plaintiff states that he has grieved these issues "only to result in threats to me by [Defendants Hendricks and McKnight]." Plaintiff contends that these actions violated his "right to be free of discrimination and [his] right to due process." He contends that Defendant McKnight "violated my rights by discrimination against [him] based on [his] race." Defendants Hendricks and McKnight, according to Plaintiff, violated his rights by making "threats to [him] in regards to the situation." Plaintiff contends that Defendant Herrington violated his "rights by failing to take any action when informed on the circumstances."

Plaintiff's fifth claim involves the visitation policy of the CSC. According to Plaintiff, the policy only allows for two 30-minute contact visits weekly. Plaintiff states that the "jail has refused to institute a policy for out-of-town visitors." According to Plaintiff, his "family drives around 4½ hrs round trip weekly, only to receive one 30 minute visit." Plaintiff believes "this is discrimination based on my origin since [he] cannot receive the same one hour total visit priveledge as local inmates get weekly." Plaintiff states that in the process of attempting to

3

resolve this issue he has been "threatened and retaliated against." He contends that this violated his right to be free from discrimination. According to Plaintiff, Defendant Herrington is responsible for this violation because he failed "to institute a fair and equal policy for visitation, even after being made aware of the problem."

Plaintiff's sixth claim involves alleged problems he has encountered when participating in the institution's grievance process. According to Plaintiff, he has attempted to resolve legitimate issues through the grievance process. Plaintiff states that "[w]hen grievances are written from CSC they are returned to Defendant [Hendricks], even when addressed to his superiors." Further, Plaintiff asserts that Defendant Hendricks's way of addressing grievances is to "call an inmate aside and make threats, leaving everything unresolved." Plaintiff states that when he grieved his complaint about the lack of sufficient contact visits, Defendant Hendricks had him transferred out of CSC into the main jail facility. According to Plaintiff, the day after the transfer he spoke with "Colonel Brady of HCDC about all of the issues in this complaint, and the jailer [Defendant Herrington] was informed as well." Plaintiff states that as a result of this conversation, "[t]he only resolution to any issue was that [he] was allowed to return to CSC for work purposes." Plaintiff states that "[m]inimal resolution, if any, is ever reached." He further states that Defendant Hendricks does not allow appeal to the jailer. Plaintiff asserts that he is afraid to use the grievance procedure any more because of the "threats and recent punishment imposed for initiating grievances." As to his sixth claim, Plaintiff contends that his Eighth Amendment right to be free from cruel and unusual punishment has been violated, that these actions constitute retaliation, and that his due process right was violated. It was Defendant Hendricks, Plaintiff asserts, who violated these rights by "failing to resolve legitimate issues and

4

by his threats and retaliation in regards to the issues." Plaintiff contends that Defendant Herrington is also responsible for these violations because he failed "to enforce a fair and just grievance procedure, fail[ed] to resolve any issues, and fail[ed] to reprimand his employees for violating [Plaintiff's] rights."

## II. **STANDARD OF REVIEW**

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if it determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d at 604. A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia*

*Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. LEGAL ANALYSIS

*A. Conditions-of-Confinement Claims*

"Extreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). An Eighth Amendment claim has both an objective and subjective component: (1) a sufficiently grave deprivation of a basic human need; and (2) a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). However, as former Chief Justice Rehnquist remarked, "[i]n short, nobody promised [inmates] a rose garden; and I know of nothing in the

Eighth Amendment which requires that they be housed in a manner most pleasing to them . . . ." *Atiyeh v. Capps*, 449 U.S. 1312, 1315-16 (1981).

### 1. *Deprivation of Sleep*

In his first claim, Plaintiff alleges that the CSC policy only allows for a maximum of six, non-consecutive hours of dimmed lights for sleep which causes him "regular headaches and affects [his] appetite and demeanor." According to Plaintiff, the lights in the CSC are turned off from approximately 10:00p.m. until 11:00p.m. at which time they are turned back on for the guards to count the inmates. The lights remain on for approximately 45 minutes when they are again turned off until 4:45a.m. when the inmates are awakened for breakfast.

Providing inmates with approximately six hours of dimmed lights each night in which to sleep is not a constitutional deprivation. *See Chavarria v. Stacks*, 102 F. App'x 433, 435 (5th Cir. 2004) (holding that constant illumination of a prison administrative unit at night in order to prevent guards from being assaulted was a reasonable security measure and thus did not violate the Eighth Amendment); *Kamau v. La. State Police Dep't*, No. 09-1488-P, 2013 WL 5462234, at *10 (W.D. La. Sept. 30, 2013); *Zatko v. Rowland*, 835 F. Supp. 1174, 1181 (N.D. Cal.1993) (noting that continuous light depriving a prisoner of sleep would be unconstitutional but holding there was no constitutional violation because the officers did not use the light to keep the prisoner awake); *Williams v. Ward*, 567 F. Supp. 10, 15 (E.D.N.Y. 1982) (holding that keeping hallway lights on all night for security reasons was not a constitutional violation even where plaintiff claimed he was unable to sleep). If courts have failed to find that constant illumination is a constitutional violation when done for legitimate penological reasons, clearly dimmed lights for six hours is not a constitutional violation. Plaintiff "has not shown an egregious deprivation

of a minimal life necessity that was so base or inhumane as to give rise to a constitutional violation." *Conlin v. Thaler*, 347 F. App'x 983, 984 (5th Cir. 2009).

Accordingly, Plaintiff's § 1983 deprivation-of-sleep claim will be dismissed from this action.

### 2. Mold and Bath Towel

Title 42 United States Code Section 1997e(e) provides, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Thus, with the passage of the Prison Litigation Reform Act, Congress required that there must be a showing of physical injury in order to bring an action for emotional injury. *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004); *Adams v. Rockafellow*, 66 F. App'x 584, 586 (6th Cir. 2003); *Pryor v. Cox*, No. 97-3912, 1999 WL 1253040 (6th Cir. Dec. 13, 1999); *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 807 (10th Cir. 1999); *Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir. 1997); *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997). The Sixth Circuit has "indicated that even though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward." *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010).

Plaintiff fails to allege any physical harm resulted from him being denied a bath towel for approximately four hours. He contends that he "was covered in dirt, grease, and dog feces from working," but fails to allege any harm or even that he was unable to shower. His complaint is that he was not provided a towel. Again, Plaintiff "has not shown an egregious deprivation of a minimal life necessity that was so base or inhumane as to give rise to a constitutional violation." *Conlin v. Thaler*, 347 F. App'x at 984. Furthermore, he states that the denial of the towel was

due to the guards finding extra towels during a search earlier that day; he does not state the denial was in any way related to some animus toward him. Thus, he has presented no allegations of a sufficiently culpable state of mind.

As to the claim involving the painting of moldy ceiling tiles, Plaintiff alleges that Defendant Hendricks directed inmates to remove ceiling tiles which had black mold on them and to paint over the mold. He states that this is a "serious and imminent danger to the health of Plaintiff and all inmates housed at CSC."

The relevant standard for evaluating a claim alleging exposure that may result in future harm was set forth in *Helling v. McKinney*, 509 U.S. 25 (1993). In *Helling*, a prisoner initiated a § 1983 action against prison officials claiming that his involuntary exposure to environmental tobacco smoke (ETS) from a cellmate posed an unreasonable risk of serious damage to his future health. *Helling v. McKinney*, 509 U.S. at 35. To prove the objective element for such a claim, the prisoner must show that he has been exposed to unreasonably high levels of black mold. *Id.* at 35. "More than mere scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will be caused by exposure" is necessary to establish the objective component of such an Eighth Amendment claim. *Id.* at 36. Further, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id.*

In the present case, Plaintiff does not state that he is housed in the area where the mold is located nor does he present any basis for his belief that the mold is a harmful type of mold. He states only that the mold was black. "The mere allegation of the presence of some mold does not create a condition 'intolerable for prison confinement.'" *Lyons v. Wickersham*, No. 2:12-CV-

14353, 2012 WL 6591581, at *4 (E.D. Mich. Dec. 18, 2012) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)).

Further, Plaintiff's allegation of harm is speculative; he does not set forth any injury he has allegedly suffered as a result of the mold. "A speculative injury does not vest a plaintiff with standing. . . ." *King v. Deskins*, No. 99-6381, 2000 WL 1140760, at *2 (6th Cir. Aug. 8, 2000); *see also Voorhees v. Huber*, No. 1:01CV-76-M, 2010 WL 3211046, at *2 (W.D. Ky. Aug. 12, 2010) (finding that plaintiff's speculation that his exposure to mold in his sleeping area could endanger his health failed to state an Eighth Amendment claim); *Simpson v. Osborne*, 4:09CV-P84-M, 2010 WL 2898808, at *3 (W.D. Ky. July 22, 2010) (finding that plaintiff's speculative injury of future harm from mold in the shower failed to state an Eighth Amendment claim); *McIntyre v. Phillips*, No. 1:07–cv–527, 2007 WL 2986470, at *2-4 (W.D. Mich. Sept. 10, 2007) (finding that plaintiff's conclusory allegations regarding his exposure to black mold and his lack of anything other than future speculative harm failed to support an Eighth Amendment claim). Likewise, in the present action, Plaintiff's conclusory allegations about the presence of mold do not demonstrate the existence of a sufficiently serious risk to prisoner health; thus his allegation regarding mold in the CSC is insufficient to state an Eighth Amendment claim.

Accordingly, Plaintiff's claims regarding mold and the temporary denial of a towel will be dismissed from this action.

## B. *Visitation*

According to Plaintiff, the policy regarding visitation for inmates housed in the CSC only allows for two 30-minute contact visits weekly. Plaintiff states that the "jail has refused to institute a policy for out-of-town visitors." According to Plaintiff, his "family drives around 4½ hrs round trip weekly, only to receive one 30 minute visit." Plaintiff believes "this is

discrimination based on [his] origin, since [he] cannot receive the same one hour total visit priveledge as local inmates get weekly." He contends that the policy violates his rights to be free from discrimination.

It is a "well-established principle that there is no inherent, absolute constitutional right to contact visits with prisoners." *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997) (citations omitted), *opinion supplemented*, 133 F.3d 382 (1998). "A properly imposed ban on contact visits will survive claims of Due Process violation." *Id.* Plaintiff does not even allege a complete ban on contact visits. In fact, he states that he enjoys weekly visits from his family. Clearly, Plaintiff fails to state a constitutional claim as to the contact visits about which he complains. Nor does his discrimination claim help his lack-of-sufficient-contact-visits' claim since being from a location further from the institution than other inmates does not place him in a protected class of people.

Accordingly, Plaintiff's § 1983 claim regarding the institution's visitation policy will be dismissed from this action.

## C. Threats

Plaintiff alleges that Defendant McKnight has "harrassed, demeaned, and humiliated [him] in front of other inmates, as well as being racially discriminative." Plaintiff states that he overheard Defendant McKnight make racist remarks about white men and women on two occasions.

Although reprehensible and not condoned, verbal abuse, harassment, and threats are insufficient to state a constitutional violation under 42 U.S.C. § 1983. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *see also Montgomery v. Conner*, No. 5:13CV-P166-R, 2013 WL 6222990, at *1 (W.D. Ky. Nov. 27, 2013) (finding that plaintiff's allegations regarding sexual

comments made to him by prison guards were only verbal abuse that did not rise to the level of a constitutional violation); *Searcy v. Gardner*, No. 3:07-0361, 2008 WL 400424, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials.").

Accordingly, Plaintiff's § 1983 claim regarding threats will be dismissed from this action.

### D. *Grievance Process*

Plaintiff makes allegations regarding various problems with the grievance process. He states that when grievances are written from CSC they are returned to Defendant Hendricks whose means of addressing them is to "call an inmate aside and make threats, leaving everything unresolved." Plaintiff states that "minimal resolution, if any, is ever reached." He further states that Defendant Hendricks does not allow appeal to the jailer.

Prisoners do not possess a constitutional right to a prison grievance procedure. *See Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002) ("A grievance appeal does not implicate the First Amendment right of access to the courts because there is no inherent constitutional right to an effective prison grievance procedure."); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding that plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (finding that plaintiff's allegation that the institution's grievance procedures were inadequate to redress his grievances did not violate the Due Process Clause and did not "give rise to a liberty interest protected by the Due Process Clause"); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (holding that "no constitutional right was violated by the

12

defendants' failure, if any, to process all of the grievances [plaintiff] submitted for consideration"). Nor does state law create a liberty interest in the grievance procedures. *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983). Further, if the prison provides a grievance process, violations of its procedures or its ineffectiveness do not rise to the level of a federal constitutional right. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) ("All circuits to consider this issue have . . . found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures."); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (stating that "there is no inherent constitutional right to an effective prison grievance procedure") (citing cases).

For these reasons, Plaintiff's § 1983 claim regarding problems with the grievance process will be dismissed from this action.

*E. Retaliation*

Plaintiff states that when he grieved his complaint about the lack of sufficient contact visits in the CSC, Defendant Hendricks had him transferred to the main jail. According to Plaintiff, the following day he spoke with "Colonel Brady of HCDC about all of the issues in this complaint, and the jailer [Defendant Herrington] was informed as well. The only resolution to any issue was that [plaintiff] was allowed to return to CSC for work purposes." Plaintiff further states that he is afraid to use the grievance procedure any more because of the "threats and recent punishment imposed for initiating grievances."

In the present case, Plaintiff contends that he was threatened and transferred from the CSC to the main jail temporarily in retaliation for filing grievances. Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation

13

claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

Plaintiff alleges that the protected conduct in which he engaged was filing institutional grievances and complaints. Plaintiff does have a constitutionally protected right to file grievances for retaliation purposes as long as they are not frivolous. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). As previously discussed, the allegations made by Plaintiff fail to state a claim.

Plaintiff alleges that the adverse action taken against him was his transfer to the main jail from the CSC. The Sixth Circuit has repeatedly held that a prison transfer is generally not a sufficiently adverse action to deter a person of ordinary firmness from engaging in protected conduct. *See Jewell v. Leroux*, 20 F. App'x 375, 378 (6th Cir. 2001) (stating that "[a] transfer to the general population of another prison is not considered sufficiently adverse to deter a person of ordinary firmness from exercising his First Amendment rights"); *Geiger v. Prison Realty Trust, Inc.*, 13 F. App'x 313, 315 (6th Cir. 2001) (finding no First Amendment right of access to the courts claim because the prisoner failed to allege that his transfer to another institution prevented or deterred him from continuing to write grievances and file lawsuits.); *Friedman v. Corr. Corp. of Am.*, 11 F. App'x 467, 471 (6th Cir. 2001) (finding that transfer to another institution that was farther away from those who visited him and did not offer the programs in which he previously participated was not an "adverse action" for purposes of a retaliation claim.); *Goddard v. Ky. Dep't of Corr.*, No. 99-5348, 99-5971, 2000 WL 191758 (6th Cir. Feb.

7, 2000) ("The transfer to the general population of another prison is not considered sufficiently adverse to deter a person of ordinary firmness from exercising his First Amendment rights.").

Plaintiff also states he was threatened. Not every action is constitutionally cognizable. *Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *Thaddeus-X v. Blatter*, 175 F.3d at 396. "There is, of course a de minimis level of imposition with which the Constitution is not concerned." *Ingraham v. Wright*, 430 U.S. at 674. The adverse action necessary to state a constitutional violation must be such that it would "'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X v. Blatter*, 175 F.3d at 396 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). This standard is an objective inquiry which is flexible enough to accommodate the various circumstances in which retaliation claims arise and capable of screening the most trivial of actions. *Thaddeus-X v. Blatter*, 175 F.3d at 398. The law is clear that verbal harassment and minor threats are not adverse actions that would deter a person of ordinary firmness. *See Thaddeus-X v. Blatter*, 175 F.3d at 398 (stating that "certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations . . ."); *Smith v. Craven*, No. 01-5634, 2003 WL 1465396, at *6 (6th Cir. Mar. 19, 2003) (failing to find that verbal harassment and minor threats were adverse actions that could deter a person of ordinary firmness from engaging in protected conduct); *Carney v. Craven*, No. 01-6270, 2002 WL 1315605, at *2 (6th Cir. June 14, 2002) (failing to find that verbal harassment and minor threats were adverse actions that could deter a person of ordinary firmness from engaging in protected conduct).

Accordingly, Plaintiff's § 1983 retaliation claim will be dismissed from this action.

## IV. CONCLUSION

Plaintiff having failed to state a claim upon which relief may be granted, the Court will enter a separate Order dismissing this case pursuant to 28 U.S.C. § 1915A.

Date: March 31, 2014

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: Plaintiff, *pro se*
    Defendants
    Henderson County Attorney
4414.003